**STATE of Missouri, Respondent,**

v.

**Noble OFIELD, Appellant.**

**No. WD 32051.**

Missouri Court of Appeals,
Western District.

May 25, 1982.

William F. O'Sullivan, Kansas City, for appellant.

John Ashcroft, Atty. Gen., and Rosalynn VanHeest, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

Defendant was convicted upon jury trial of forcible rape, § 566.030, RSMo 1978 (Cum.Supp.1981), and sodomy, § 566.060 RSMo 1978 (Cum.Supp.1981), upon one Dollie. The jury was unable to agree on punishment, and the court assessed punishment at 10 years' imprisonment on each count, the sentences to run concurrently.

Defendant appeals, complaining (among other points, to be noted later) of undue restriction upon his cross-examination of the complaining witness and the rejection of evidence tending to impeach her credibility. His complaints are well taken and necessitate a reversal of the case and a remand for a new trial.

The acts of rape and sodomy allegedly took place in Dollie's apartment in Kansas City, Missouri, during the early morning

hours of October 5, 1979. Dollie had admitted defendant to the apartment. They had had a long acquaintance with each other. She denied defendant's requests for sexual favors. By the use of a handgun he forced her submission. The disgusting details need not be recounted here.

Defendant denied the whole affair and put forward an alibi defense.

*Exclusion of cross-examination and of direct evidence to show bias of witness against defendant.*

Defendant was not allowed to cross-examine Dollie about her having asked defendant, some months before, to forge her husband's signature on an insurance application, and her anger at his refusal to do so. Nor was he allowed to cross-examine her about his refusal of her request to give employment to her son at his body shop, and her resentment of his refusal.

Defendant also offered to prove the two incidents by his own testimony as a part of his case in chief, but his offer of proof was rejected.

There is no question but that a witness may be cross-examined about any animosity he may feel towards the party he is testifying against, and about any relationship with the party, which might motivate him to speak untruthfully, or which might motivate him to distort or exaggerate the facts to which he is testifying. *State v. Pigques,* 310 S.W.2d 942 (Mo.1958); *State v. Calmese,* 541 S.W.2d 349 (Mo.App. 1976). The rejection by defendant of the two requests of the prosecuting witness, one to forge the insurance application and the other to give employment to her son, and her resentment towards defendant on those accounts, were proper subjects for cross-examination for impeachment purposes. The trial court was in error in denying defendant's request to question her about the incidents. The jury was entitled to know about them in order to evaluate her testimony.

The trial court could place reasonable limits upon the cross-examination, of course, in order that the subject, being collateral to the main issue, did not consume an inordinate amount of time and did not distract the jury from the main inquiry. McCormick, Evidence, § 40 (1972). But to exclude any inquiry about it, as was done here, is beyond the court's discretion and is reversible error. *State v. Pigques,* supra at 951; *State v. Patton,* 599 S.W.2d 929, 933[3] (Mo.App.1979).

Not only was the defendant entitled to cross-examine the witness on the matters mentioned, he was entitled to prove them by his own testimony as a part of his case in chief. *State v. Pigques,* supra at 950; 98 C.J.S., Witnesses, § 565 (1957).

The attorney general argues that the incidents about which the defendant wanted to cross-examine Dollie were excludable on the ground of remoteness. The tendency of a given item of testimony to show hostility toward the defendant or to show some other motivation to speak untruthfully, may be absent or may be so tenuous as to be excludable on that ground. That was the ground for exclusion of impeaching evidence in two cases cited by the attorney general, namely, *State v. Rack,* 318 S.W.2d 211 (Mo.1958), and *State v. McFarland,* 604 S.W.2d 613 (Mo.App.1980), but those cases are unlike the one before us and are not applicable here. The remoteness of the incidents in the present case went to the weight to be accorded them by the jury, not to their admissibility.

*Exclusion of testimony of solicitation of bribe for impeachment of witness credibility, where no connection to witness shown.*

Defendant also wanted to question Dollie and to prove by defendant's own testimony that Dollie's husband had approached defendant with the suggestion that if defendant would pay him some money that he, Dollie's husband, "felt he could get the victim not to testify". If the husband's approach to the defendant can be attributed to witness Dollie, it was admissible evidence to impeach Dollie's credibility. *State v. Eckler,* 106 Mo. 585, 17 S.W. 814 (1891). *State v. Beaver,* 621 S.W.2d 361 (Mo.App.1981).

However, it does not appear that defendant had even colorable information that the husband had acted in Dollie's behalf or with her knowledge, approval or acquiescence. Dollie's and her husband's cohabitation was evidently an intermittent thing and it does not appear even that they were living together when the alleged approach was made. In asking her on cross-examination if she had authorized the approach, defendant would have been probing in the dark. The case is therefore unlike *State v. Eckler*, supra, where the defendant had in hand a letter from the prosecuting attorney, addressed to him, which stated that the prosecuting witness had authorized him "to settle the matter in any manner he saw fit". Without the foundation of some such colorable connection between the witness and the bribery proposal, we believe that the trial court was correct in not permitting this inquiry. The defendant did not ask the court's permission to question Dollie outside the jury's hearing with a view to establishing the connection.

*Cross-examination of prosecuting witness about alternate source of semen; court's discretionary control of extent of cross-examination.*

■ Next the defendant complains that he was not permitted to inquire about the whereabouts of Dollie's husband, Joseph Brown, at the time of the alleged rape. The state had proved the presence of semen in Dollie's vagina when the rape was reported, and defendant's position is that he should have been allowed to inquire about defendant's husband's whereabouts, since the witness's answers might have suggested another explanation for the presence of semen. We find from the transcript, however, that the question of other acts of intercourse by Dollie, at or near the time of the alleged rape, was extensively gone into on cross-examination. The court, in sustaining the state's objection to further inquiry into the whereabouts of Dollie's husband on the night of the alleged rape, was well within his discretionary control of the limits of cross-examination. 98 C.J.S., Witnesses, § 404 (1957).

*Identification of laboratory slide.*

Defendant makes two other points. One relates to the tracing to the prosecuting witness of a certain slide which, according to the testimony of a forensic chemist, contained sperm cells. Defendant says it was never shown that the sperm cells were secured from the prosecuting witness. No discussion of this point is needed, for the subject is well understood by lawyers and the state will doubtless be more careful to identify the sperm specimen in another trial. *State v. Moxley*, 102 Mo. 374, 14 S.W. 969 (1890); *State v. Roper*, 591 S.W.2d 58 (Mo.App.1979).

*Volunteered statement by witness about polygraph examination.*

Defendant complains also of the prosecuting witness's volunteering an unresponsive answer which indicated that she had taken a polygraph test. Upon another trial the witness should be cautioned not to mention a polygraph examination in any way. *See State v. Biddle*, 599 S.W.2d 182 (Mo. banc 1980).

The judgment is reversed and the cause remanded for a new trial.

All concur.