STATE of Missouri,
Plaintiff/Respondent,

v.

Peter PATTERSON,
Defendant/Appellant.

Peter PATTERSON, Movant/Appellant,

v.

STATE of Missouri,
Defendant/Respondent.

Nos. 60262, 61677.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 9, 1993.

- Brad B. Baker, Columbia, for appellant.

William L. Webster, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Judge.

A jury found Peter Patterson guilty of two counts of first degree assault in violation of § 565.050 RSMo 1986 and two counts of armed criminal action in violation of § 571.015.1 RSMo 1986. The trial court found Patterson to be a prior offender and sentenced him to concurrent terms of fifteen years on each assault count and concurrent terms of ten years on each armed criminal action count. The trial court ordered the sentences for the armed criminal action counts to be served consecutively to the sentences for the assault counts. Patterson filed a Rule 29.15 motion for post-conviction relief which the motion court denied after an evidentiary hearing.

Patterson appeals both the judgment of the trial court and the order of the motion court. On direct appeal Patterson contends that the trial court erred in admitting evidence that he had pointed a gun at one of the victims several days before the offense, erred in failing to declare a mistrial as a result of an argument made by the prosecutor during the rebuttal portion of his closing argument, and plainly erred in giving the MAI instruction on reasonable doubt. On appeal from the order of the motion court, Patterson argues that he was denied effective assistance of counsel because his trial counsel failed to call and examine an alibi witness. He also claims that his post-conviction counsel was ineffective because he failed to call the same alibi witness. We affirm both the judgment of the trial court and the order of the motion court.

## DIRECT APPEAL

The sufficiency of the evidence to sustain Patterson's conviction is not in dispute. The charges arise from an incident in which Patterson shot Jason Perry and Christopher Johnson as they were driving north on Interstate 270 in a pickup truck. Patterson was a passenger in a vehicle driven by his brother. Patterson's vehicle pulled up to the left of the pickup truck and Patterson began firing a .45 automatic pistol at Perry and Johnson. The shots shattered the truck's back window and hit Perry and Johnson. As a result the truck went into a ditch and rolled over. Perry and Johnson both suffered bullet wounds to their arms. Both victims recognized Patterson from previous encounters. Perry gave Patterson's name and address to police. Other eyewitnesses provided police with a description of the vehicle and its license number. The vehicle was registered to Patterson's sister. There was also evidence that several days prior to the shooting, Patterson had threatened Perry for "messing with" Patterson's brother's girlfriend and that on the day after that incident, Patterson had pointed a pistol at Perry and attempted to shoot it.

For his defense Patterson denied the shooting and testified that he was at a barbershop at the time of the shooting. Two witnesses also testified to Patterson's presence at the barbershop. Patterson also denied any animosity towards Perry, denied ever following Perry in a car, and denied ever pointing a firearm at Perry.

For his first point Patterson contends that the trial court erred in admitting, over his objection, Perry's testimony that, several days before the assault for which Patterson was on trial, Patterson had pointed a pistol at Perry and attempted to shoot it. Patterson argues that this testimony constituted evidence of other uncharged crimes and was irrelevant to the charged crime.

Evidence of separate, distinct and unrelated crimes is generally inadmissible, unless the evidence has a legitimate tendency to establish a defendant's guilt of the crime charged. *State v. Henderson*, 826 S.W.2d 371, 374 (Mo.App.1992). Such evidence is admissible to prove the crime charged if it tends to establish motive, intent, absence of mistake or accident, a com-

mon scheme or plan, identity, or the *res gestae*, when the probative value of the evidence outweighs its prejudicial effect. *Id.; State v. Hamilton*, 817 S.W.2d 8, 11 (Mo.App.1991). The admission of such evidence is within the trial court's discretion because the trial court is in the best position to evaluate whether the potential prejudice of relevant evidence outweighs its relevance. *State v. Williams*, 784 S.W.2d 309, 312 (Mo.App.1990).

On direct examination Perry testified that after he was shot he told police Patterson had fired the gun from a car driven by Patterson's brother. Perry testified that he recognized Patterson because he had seen him approximately 25 times before. He knew Patterson by name and knew where he lived. The prosecutor then asked Perry when he had last seen Patterson prior to the shooting. Patterson's counsel objected on the ground that Perry's answer would relate evidence of other crimes. The prosecutor sought to admit the testimony on the ground it was relevant to show motive, absence of mistake and identity. The trial court overruled the objection. Perry then testified that, a few days prior to the shooting, he was in a truck and Patterson "stood out in the middle of the street with a .45 in his hand and pointed it at my truck; and it was raining and he tried to shoot it, I guess, and the gun jammed...." Perry drove off and reported the incident to the Ferguson Police Department. Perry also testified, without further objection, that on the day prior to the firearm incident, he was driving in the truck with a passenger, Kim Golett, when Patterson and his brother pulled up at a stop light, got out of their car and began yelling and hitting the truck's windshield. On another occasion Patterson had threatened Perry for "messing" with Patterson's brother's girlfriend.

The trial court could properly find that evidence that Patterson had pointed and attempted to shoot a gun at Perry a few days before the shooting was logically relevant to show Patterson's motive for the shooting. *Hamilton*, 817 S.W.2d at 11. The testimony provided proof of Patter-

son's *animus* toward Perry and his intent to inflict injury. *Williams*, 784 S.W.2d at 312; *State v. Adams*, 750 S.W.2d 488 (Mo.App.1988); *State v. Earvin*, 743 S.W.2d 125, 127 (Mo.App.1988); *State v. Wright*, 735 S.W.2d 137, 140 (Mo.App.1987). Patterson's hostility toward and motive to injure Perry were contested issues at trial. The probative value of the evidence outweighed its prejudicial effect. The trial court did not abuse its discretion in admitting the evidence regarding this incident. Point one is denied.

For his second point Patterson asserts the trial court erred in denying his motion for a mistrial when, during the rebuttal portion of the state's closing argument, the prosecutor questioned why Patterson's witness, Golett, had denied that she had ever been in the car with Perry when anyone had followed him or made threats against him. The prosecutor suggested that Golett may have been intimidated into so testifying. Patterson contends the prosecutor's remarks were inflammatory, prejudicial and unsupported by the evidence.

At trial Perry testified that several days prior to the shooting Patterson and his brother had followed Perry in a car, got out at a stoplight, threatened Perry and hit his windshield. Perry testified that Golett was in the truck with him. Johnson testified that Patterson had told him that he had followed Perry and beat on the truck because Golett was his brother's girlfriend. However, Golett testified that at the time of the shooting Patterson's brother was not her boyfriend and that she had never been in a vehicle with Perry while it was followed by another vehicle.

During closing argument Patterson's counsel argued, "There is no evidence in this case other than the word of two people. Two people who I submit to you are lying sons-of-bitches.... Other witnesses came in and told the truth." He continued, "As I said, based on the unsupported and uncorroborated words that these two have said ... do not send Peter Patterson to the sodomy factory in Jefferson City."

In rebuttal the prosecutor argued:

So what I'm getting at—trying to make [Perry] look like a liar. [Johnson] confirmed he saw [Perry] and [Golett]. So, I guess, the easiest thing to do is deny everything. You run the risk when you do that of maybe creating a story that doesn't make any sense. And, why would Kim Golett do that? What motive would she have to do that?

I mean, motives of people. I don't know. I can't guess. I know if [Patterson] is capable of doing the thing we're saying he did that I would not—if we were related—if he asked me to say something for him, I would say it. I would say anything he wanted.

Patterson's counsel objected on the grounds that the prosecutor was implying that threats were made by Patterson against Golett and asked the court to declare a mistrial. The court sustained the objection, overruled the request for a mistrial, and instructed the jury to disregard the prosecutor's comments. The court later instructed the jury that counsel's comments were not evidence.

A mistrial is a drastic remedy to be granted only with the greatest caution in extraordinary circumstances. *State v. Felton*, 834 S.W.2d 883, 886 (Mo.App.1992). To warrant a mistrial a prosecutor's argument must not only be improper, but must also be so prejudicial to the defendant under the facts and circumstances of the particular case that no other curative remedy could remove the error. *State v. Lomax*, 712 S.W.2d 698, 700 (Mo.App.1986); *State v. Cooper*, 708 S.W.2d 299, 304 (Mo.App. 1986). Patterson's counsel had argued that the state's witnesses were lying and the defense witnesses were telling the truth. Under these circumstances the prosecutor had a right to retaliate. *State v. Heistand*, 714 S.W.2d 842, 847 (Mo.App.1986). The prosecutor had a right to comment on the credibility of a defense witness, and the truth or falsity, from the state's point of view, of her testimony. *State v. Griggs*, 445 S.W.2d 633, 636 (Mo.1969).

Additionally, the state had a right to draw inferences from the evidence which it in good faith believed to be justified. *Ruff v. State*, 815 S.W.2d 460, 465 (Mo.App. 1991); *State v. Nickens*, 701 S.W.2d 478, 483–84 (Mo.App.1985). There was sufficient evidence in the case from which the prosecutor could infer a motive for Golett to lie. Golett admitted that Patterson's brother Marvin had been her boyfriend for five years and that they still talked occasionally. The state had introduced evidence that Patterson had threatened and shot Perry because Perry had been seen with Golett, whom Patterson believed was Marvin's girlfriend. Such evidence could fairly support an inference that Golett would lie to protect herself from the Pattersons. The trial court did not abuse its discretion in failing to declare a mistrial. Point two is denied.

For his last point on direct appeal Patterson contends that the trial court plainly erred in giving MAI–CR3d 302.04 on reasonable doubt because the instruction dilutes the state's burden of proof. This point has been thoroughly and repeatedly addressed by the Missouri Supreme Court. *State v. Twenter*, 818 S.W.2d 628, 634 (Mo. banc 1991). This court is constitutionally bound to follow the last controlling decision of the Missouri Supreme Court. Mo. Const. art. V, § 2; *State v. Weems*, 800 S.W.2d 54, 58 (Mo.App.1990). Defendant argues that the decision of the United States Supreme Court in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) invalidates MAI–CR3d 302.04's definition of proof beyond a reasonable doubt. The Missouri Supreme Court has explicitly held that MAI–CR3d 302.04 meets the constitutional requirements for a definition of reasonable doubt and is unlike the charge in *Cage* which equated proof beyond a reasonable doubt with a lower standard. *State v. Griffin*, 818 S.W.2d 278, 282 (Mo. banc 1991). This point is denied.

### POST–CONVICTION APPEAL

For his appeal from the motion court's denial of relief under Rule 29.15, Patterson contends he was denied effective assistance of counsel because his retained trial coun-

sel failed to interview and call Tony Stevenson as an alibi witness.

In his motion Patterson alleged that Stevenson was available to testify and would have testified that he and Patterson were in a barbershop when the shooting occurred. At the motion hearing Patterson's trial counsel testified that he was given Stevenson's name and had his address, but his attempt to contact him was unsuccessful. Patterson's trial counsel further testified that he did not subpoena Stevenson or make further efforts to contact him because Stevenson was the brother of Patterson's girlfriend and he believed Stevenson would have appeared if he had wanted to. Counsel thought Stevenson was "making himself scarce" because he did not want to come in. He also thought there was an outstanding warrant for Stevenson's arrest at that time. Counsel stated, "Basically, my understanding was that [Stevenson] didn't want to come in." Furthermore, counsel testified that, in his experience, when he brings in this type of witness involuntarily, "they almost invariably hurt me."

The motion court found "counsel's efforts with regard to this witness conformed to that of a reasonably competent lawyer rendering similar services under existing circumstances" and that Stevenson's testimony would have been substantially similar to other witnesses' testimony, "which the jury apparently chose to not believe."

■ Appellate review of a denial of postconviction relief is limited to whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990). The motion court's findings, conclusions and judgment are clearly erroneous only if a review of the entire record leaves the reviewing court with the impression that a mistake has been made. *Vinson*, 800 S.W.2d at 448.

■ To prevail on a claim of ineffective assistance of counsel, a movant must show both that counsel's performance was deficient and that the deficient perfor-

mance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* Movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *State v. Childers*, 801 S.W.2d 442, 447 (Mo.App.1990). To show prejudice a movant must show there was a reasonable probability that, but for the errors by his attorney, the jury would have had a reasonable doubt respecting his guilt. *Id.* If a movant makes an insufficient showing on either the deficient performance component or the prejudice component, the court need not address the other component. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

■ An attorney or trial counsel may be found ineffective for failing to locate and call a witness only if the movant can show that the witness could have been located through reasonable investigation, the witness would have testified if called, and the witness' testimony would have provided a viable defense. *Twenter*, 818 S.W.2d at 639–40; *Vinson*, 800 S.W.2d at 448–49. Patterson failed to show that Stevenson's testimony would have provided a viable defense. Stevenson did not appear at the motion hearing.[1] Accordingly, the trial court had no opportunity to ascertain what his testimony may or may not have been. *Twenter*, 818 S.W.2d at 636, 639–40; *Canterbury v. State*, 781 S.W.2d 107, 110 (Mo.App.1989).

Moreover, even if the testimony would have been as represented at the hearing, it was cumulative to identical testimony of two other witnesses who testified that Patterson was at a barbershop at the time of the shooting. Failure to present cumulative evidence is not ineffective assistance of counsel. *Twenter*, 818 S.W.2d at 636.

Additionally, counsel's strategic decision not to risk forcing a reluctant alibi witness to testify was reasonable and constituted

---

1. A subpoena had been left for Stevenson at his residence, but he was never personally served.

sound trial strategy under the circumstances. "In the real world containing real limitations of time and human resources, criminal defense counsel is given a heavy measure of deference in deciding what witnesses and evidence are worthy of pursuit." *Twenter,* 818 S.W.2d at 635 (citing *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066). Patterson also failed to establish that Stevenson would have testified if called. The trial court's finding that Patterson was not denied effective assistance of trial counsel is not clearly erroneous.

In his remaining point Patterson contends that he was denied effective assistance of post-conviction counsel because his post-conviction counsel failed to call Stevenson as a witness at the motion hearing. Because there is no constitutional right to counsel in a post-conviction proceeding, there is no constitutional right to effective assistance of post-conviction counsel. *Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). Accordingly, claims of ineffective assistance of post-conviction counsel are categorically unreviewable. *State v. Hunter,* 840 S.W.2d 850, 871 (Mo. banc 1992).

The judgment of the trial court and the order of the motion court are affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.